

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**EMANUEL C. SIMMONS,**

    Petitioner,

v.                                                             Civil Action No. **3:09cv406**

**GENE JOHNSON,**

    Respondent.

## MEMORANDUM OPINION

Emanuel C. Simmons ("Petitioner"), proceeding *pro se*, filed this 28 U.S.C. § 2254 petition. Petitioner challenges his convictions in the Circuit Court for the City of Norfolk ("the Circuit Court"). Petitioner raises the following claims:

| | |
|---|---|
| Claim One | Counsel was ineffective for failing to argue to the court during the preliminary hearing that the in-court identification of Petitioner by Jack Groder was inherently incredible and thereby inadmissible; and, |
| Claim Two | Counsel was ineffective for failing to file a motion to suppress the in-court identification of the Petitioner by Jack Groder because Groder failed to give a description prior to trial and did not select the Petitioner from a photo line-up. |

(Pet. Att. B.) Respondent argues that Petitioner's claims are without merit. Respondent filed a motion to dismiss. Petitioner has responded. This matter is ripe for judgment.

## I. PROCEDURAL HISTORY

On the night of September 26, 2004, Michael Williams was fatally shot in a parked vehicle. Williams was waiting in the car for Alton Archie, who was acting as a middleman in a marijuana transaction. Jack Groder, a friend of Williams, was driving.

On December 6, 2004, the Circuit Court held a probable cause hearing. On December 15, 2004, a grand jury indicted Petitioner on one count of first degree murder, two counts of

attempted robbery, and three counts of use of a firearm in the commission of a felony. On July 21, 2005, a jury convicted Petitioner of one count of first degree murder, two counts of attempted robbery, and three counts of use of a firearm in the commission of a felony.

Petitioner's conviction rested entirely on the eyewitness testimony of Groder and Archie. Groder testified that he took Williams to a 7-Eleven to meet Archie. As Williams and Archie talked through the passenger side window, Petitioner approached them on a bicycle and told Williams to buy drugs from him instead. Archie replied that he was serving Williams. Groder got a good look at Petitioner as Petitioner circled around the parking lot for several minutes. Archie got in to Groder's car, and they drove to vacant lot within viewing distance of the 7-Eleven. (Trial Tr. Vol. 1 at 34.) Archie left to pick up the marijuana. Approximately two minutes later, Petitioner rode up on his bicycle and approached the passenger door. Petitioner told Williams that he should have bought his drugs from Petitioner, and repeatedly demanded that Williams "Give it up." (Trial Tr. Vol. 1 at 39.) After Williams denied his third request, Petitioner replied "You've been blessed" and produced a revolver. (Trial Tr. Vol. 1 at 39.) The gun misfired on the first shot, but on the second Williams was fatally shot. Groder testified that the area was well-lit, and that he saw Petitioner clearly through the windshield and window of his car.

Archie testified that he had seen Petitioner regularly in the neighborhood for the past eight or nine years. He confirmed that Petitioner approached him and Williams at the 7-Eleven. As he was walking to get the drugs, Archie heard gunfire. Archie turned to see Petitioner standing near Groder's car, which was pulling away. Petitioner mounted his bike and rode

towards Archie. Petitioner, brandishing the revolver, told Archie to "Give it up." (Trial Tr. Vol. 1 at 105.) Petitioner rode away after Archie denied having any money.

On March 24, 2006, at Petitioner's sentencing hearing, the Circuit Court entertained Petitioner's motion for a new trial. Thurman Brown, a witness for Petitioner, testified that he was selling cocaine on his front porch the night of the murder and witnessed the events. When Brown saw Petitioner's face on the news in conjunction with the shooting, Brown thought, "That's not the man, and . . . I wanted to get on his case and help him out and come down here and testify for him, but I'm out here selling drugs." (Mar. 24, 2006 Tr. 13.)[1] Brown's subsequent testimony contradicted his initial representation that he knew that Petitioner was innocent, however. Brown testified that there was no lighting in the area, and that the assailant was wearing black and had a hood on. When the Circuit Court asked "How do you know it wasn't [Petitioner] if you couldn't see his face," Brown responded: "Exactly, I couldn't see his face. I know that the guy that was out there with me couldn't see his face. . . . Ain't nobody see his face." (Mar. 24, 2006 Tr. 17.) Brown testified that he had seen Petitioner before, but was not a friend of his. After hearing from Groder, who again testified that he clearly saw the assailant, the Circuit Court denied the motion for a new trial because Brown's testimony was not likely to produce a different result. The Circuit Court sentenced Petitioner to a total active term of incarceration of thirty-three years.

On June 26, 2009, the Court received Petitioner's federal habeas petition. Respondent concedes that Petitioner exhausted his claims on state review, and argues that they lack merit.

---

[1] Brown had been convicted for selling cocaine by the time of the hearing.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on an ineffective assistance of counsel claim, a petitioner must show that counsel's deficient representation prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Satisfying the deficient performance element requires the petitioner to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). Demonstrating prejudice requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to show either prejudice or deficiency, the Court is not obliged to address the other element. *Id.* at 697, 700.

In Claim One, Petitioner contends that trial counsel rendered ineffective assistance by failing to argue during a preliminary hearing that the testimony of Jack Groder was unreliable and should not have been admitted. Petitioner explains that Groder testified that he did not remember what the assailant was wearing, what kind of bike he was riding, or his hairstyle, and could not articulate any distinguishing features. Furthermore, Groder failed to identify Petitioner during a photo lineup arranged shortly after the murder. (Br. Supp. § 2254 Mot. 5-6; *see* Trial Tr. Vol. 1 at 51-57.) Petitioner claims that counsel's failure to move the Circuit Court to suppress the testimony as inherently unreliable resulted in the Circuit Court's certifying the charges to the grand jury, which later indicted him on December 15, 2004. In Claim Two, Petitioner contends that trial counsel rendered ineffective assistance by failing to secure the

suppression of Groder's testimony at trial pursuant to *Manson v. Brathwaite*, 432 U.S. 98 (1977). Because Petitioner's claims rely on the same facts and law, they will be considered together.

Courts undertake a two-step analysis to determine whether identification testimony is admissible. *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997). At step one, courts determine whether the identification procedure is impermissibly suggestive. *Id.* (*citing Manson*, 432 U.S. at 110; *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972)). The United States Court of Appeals for the Fourth Circuit has explained that a procedure is unnecessarily suggestive "if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Id.* (citation omitted). At step two, courts determine whether the identification is "nevertheless reliable under the totality of the circumstances." *Id.* (*citing Manson*, 432 U.S. at 100; *Biggers*, 409 U.S. at 198). Relevant factors include, but are not limited to:

> (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty in making the identification; and (5) the length of time between the crime and the identification.

*United States v. Saunders*, 501 F.3d 384, 391 (4th Cir. 2007) (citations omitted), *cert denied*, 128 S. Ct. 1107 (2008). Courts may consider other evidence of guilt in determining the reliability of a given identification. *Id.* at 393 (*quoting United States v. Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996).

"[A]n earlier failure to identify . . . does not require exclusion of an in-court or pretrial identification, if otherwise reliable." *Howard v. Bouchard*, 405 F.3d 459, 484 (6th Cir. 2005) (citations omitted). "The Fourth Circuit has consistently applied the *Biggers* analysis in situations where there is no out-of-court identification offered at trial and where the

Government's identifying witness is allowed to see the defendant seated at the defense table prior to their testimony." *Satcher v. Netherland*, 944 F. Supp. 1222, 1292 (E.D. Va. 1996) (citations omitted) (collecting cases), *rev'd in part on other grounds*, 126 F.3d 561 (4th Cir. 1997). "An in-court identification is admissible if the witness has independent knowledge which attenuates the inherently suggestive enviroment of a courtoom identification of a single defendant." *United States v. Gilchrist*, 119 F. App'x 485, 492-93 (4th Cir. 2005) (No. 03-4379) (*citing United States v. Murray*, 65 F.3d 1161, 1169 (4th Cir. 1995); *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984)), *available at* 2005 WL 44943, at *6.

Petitioner argues that Groder's identification does not satisfy the requirements for reliability pursuant to *Biggers* and its progeny. Petitioner explains that Groder lacked an opportunity to view the assailant because the shooting occurred in a dark area, and because the "shooter [was] on the passenger side of the vehicle obviously out of view from Jack Groder the driver." (Br. Supp. § 2254 Mot. 14 (Cap. Corrected).) Petitioner's argument fails to address Groder's testimony that he saw Petitioner clearly both at the 7-Eleven and at the scene of the shooting. (Trial Tr. Vol. 1 at 33, 42.) Moreover, Groder testified that he could see Petitioner clearly through his windshield, and that his view was not obstructed by his passengers. (Trial Tr. Vol. 1 at 51.) Petitioner fails to demonstrate that Groder had no opportunity to see him.

Petitioner also invokes the second factor and third factors, arguing that Groder's failure to identify any specific features or clothing shows that his attention was not on the assailant and constitutes an inaccurate description. Petitioner's claim is unsupported by any direct evidence that Groder's attention was anywhere other than on the assailant, and is contradicted by Groder's

testimony.[2] Additionally, Groder's uncontradicted testimony established that Petitioner's face did not have any unusual or remarkable features. (Trial Tr. Vol. 1 at 58-59.) Thus, one would not expect Groder to be able to describe Petitioner's face apart from recognizing it, and the Court does not draw the inference that Groder's attention was elsewhere. As for the accuracy of Groder's initial description, it is true that Groder did not provide much in the way of description, and failed to identify Petitioner in a photo lineup.[3] No indication exists that Groder rendered an inaccurate description, however, and Petitioner's lack of remarkable or unusual features would readily account for Groder's initial failure to identify Petitioner. Petitioner does not demonstrate that Groder's initial identification was inaccurate.

Finally, Petitioner claims the fourth factor favors him because Groder's identification at trial was equivocal. Petitioner is wrong. Groder never expressed any uncertainty as to whether Petitioner was the person who shot Williams. At the probable cause hearing, Groder unequivocally affirmed that he saw the assailant clearly and had "no doubt that [Petitioner] is the person that shot [Williams]." (Dec. 6, 2004 Tr. 9.) At trial, Groder testified that there was "not a doubt whatsoever Emanuel Simmons is the person who murdered Mike Williams. I could never forget that face." (Trial Tr. Vol. 1 at 59.) Moreover, Archie's supporting testimony, which Petitioner does not challenge, corroborates Groder's identification. Contrary to Petitioner's

---

[2] When asked at the probable cause hearing whether he was watching the gun or the person holding it, Groder testified that he "was paying attention to the exchange between [Williams and the assailant]. The weapon didn't come out until ten seconds before I left." (Dec. 6, 2004 Tr. 17.)

[3] Investigating Officer Brian Wray testified that Petitioner gave no description of the assailant's face, and that there was no attempt to do an artist's composite. (Trial Tr. Vol. 1 at 77-78.)

contentions, none of the *Manson* factors suggest that Groder's identification was tainted with a "substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 107 (*citing Coleman v. Alabama*, 399 U.S. 1, 5 (1970)); *see also Murray*, 65 F.3d at 1169 (upholding identification where defendant, whom witnesses viewed at defendant's table earlier in the day, was seen during crime by observant witnesses who were "positive in their identification . . . at trial"). The accuracy of the identification was therefore a question for the members of the jury, to whom counsel for Petitioner ably argued that the identification was suspect based on Groder's failure to identify Petitioner in the pretrial photo array. *See Johnson v. McCaughtry*, 92 F.3d 585, 597 (7th Cir. 1996) (noting that cross-examination can substantially decrease possibility of misidentification) (*citing Simmons v. United States*, 390 U.S. 377, 384 (1968)). Because Petitioner fails to show any reasonable probability that a motion to suppress Groder's identification would have succeeded, Petitioner cannot show that Counsel's failure to make such a motion resulted in any prejudice. Claims One and Two will be DENIED.[4]

## III. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether

---

[4] On February 8, 2010, the Court received from Petitioner a motion for summary judgment. Petitioner argues that he is entitled to relief because "Respondent has failed to provide the Court with any transcripts, Respondent has also failed to produce a complete record of proceedings at Petitioner's trial." (Mot. Summ. J. 1.) Contrary to Petitioner's suggestions, Respondent has produced the relevant transcripts and records. Petitioner's motion for summary judgment (Docket No. 14) will be DENIED.

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Petitioner is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

## VI. CONCLUSION

In light of the foregoing, Respondent's motion to dismiss (Docket No. 6) will be GRANTED. The petition for a writ of habeas corpus will be DENIED, and the action will be DISMISSED. Petitioner will be DENIED a COA.

An appropriate Order shall issue.

Date: 3-11-10
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge